Charles Edward **CUNNIGAN**, Appellant,

v.

**STATE of Oklahoma**, Appellee.

Nos. F–85–610, M–86–16.

Court of Criminal Appeals of Oklahoma.

Dec. 9, 1987.

Rehearing Denied Jan. 15, 1988.

Mark Barrett, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

**OPINION**

PARKS, Judge:

Charles Edward Cunnigan, appellant, was tried by jury and convicted of two counts of Robbery with Firearms [21 O.S. 1981, § 801] (Counts I & II), Shooting with Intent to Kill [21 O.S. 1981, § 652] (Count III), Resisting Arrest [21 O.S. 1981, § 268] (Count IV), Feloniously Pointing a Firearm [21 O.S. 1981, § 1289.16] (Count V), Carrying a Weapon [21 O.S. 1981, § 1272] (Count VI), and Possession of Marijuana [63 O.S. 1981, § 2-402] (Count VII), in Case No. CRF–84–142, in the District Court of Grady County, the Honorable James R. Winchester, District Judge, presiding. The jury set punishment at thirty (30) years imprisonment for Counts I & II, forty (40) years imprisonment for Count III, One (1) year imprisonment and a Five Hundred ($500) Dollar fine for Count IV, ten (10) years imprisonment for Count V, thirty (30) days imprisonment for Count VI, and one (1) year imprisonment for Count VII. Judgments and sentences were imposed in accordance with the jury's verdict, the sentences to run concurrently. We affirm.

On October 20, 1984, Dennis Burnett and his mother checked into a motel in Chickasha, Oklahoma, at approximately 3:30 a.m. Burnett rented the room under an assumed name. The appellant entered into evidence at trial a statement made by Burnett to the police that he rented the room to sell marijuana and amphetamines. A "friend" met Burnett at the room, left to get a cigarette, and shortly after his return, there was a knock at the door.

Burnett opened the door in response to the knock, and a man wearing a ski mask over his face knocked Burnett to the floor. A second man entered the room. The second intruder did not wear a mask over his face and both Burnett and his mother identified the appellant as the second robber.

The appellant held a pistol to Burnett's stomach, forced him to his knees, and demanded his money. Burnett gave the appellant approximately $300, held his hands in the air, and begged the robbers not to hurt his mother. The appellant laughed

and shot Burnett in the abdomen. One of the robbers dragged Burnett to the bathroom, dumped him into the bathtub, and the other robber threw Burnett's mother into the tub on top of him. The robbers demanded "where's the stuff" and fled with Burnett's suitcase and with approximately $200 taken from the mother's purse. They also stole a .357 magnum pistol from the mother. Burnett never lost consciousness and drove himself to the hospital, where a .22 caliber bullet was removed.

Three days later, Officer Kelly of the Chickasha Police Department arrested the appellant on a public street under authority of an arrest warrant. As another officer, Officer Willis, tried to handcuff the appellant, the appellant spun around, knocked Officer Willis back about ten feet with his left hand, pulled a gun from his waistband with his right hand, and pointed the gun at Officer Willis as the officer lay on his back on the ground. Officer Kelly clubbed the appellant on the back of the head, and the gun flew out of his hand and into the grass. It took five officers to subdue the appellant and handcuff him. In a search incident to arrest, the officers removed an unloaded .357 magnum pistol from the appellant's waistband and a bag of marijuana from his pocket. A police ballistics expert testified at trial that the .22 caliber gun knocked from the appellant's hand fired the bullet removed from Burnett's abdomen.

For his first assignment of error, the appellant asserts that the court erred by failing to give a cautionary instruction on eyewitness identification. At trial, the appellant called two former Chickasha Police officers, who testified that they interviewed Mr. Burnett and his mother at the hospital, both of whom told the officers that both robbers wore masks. On cross-examination earlier in the trial, Burnett and his mother denied making any statement that both robbers wore masks and expressly testified that the appellant was unmasked. The written statement made by Burnett in the hospital to these same officers is silent that the appellant was masked.

The appellant relies on *McDoulett v. State*, 685 P.2d 978, 980–81 (Okla.Crim. App.1984), in which we found that a cautionary instruction should be given when eyewitness identification is a critical element of the prosecution's case and serious questions exist concerning the reliability of that identification because (1) the witness was not in a position to clearly observe the assailant, or (2) the witness was not positive as to identity, or (3) the witness' identification was weakened by qualification or by failure to identify the defendant on one or more prior occasions, or (4) the witness' accuracy is doubtful, or (5) there is some question as to the accuracy of the witness' prior description of the assailant. *Id.*

The appellant failed to request an instruction on eyewitness identification. Failure to request such an instruction operates as a waiver unless the Court is convinced that, under the facts of the particular case, the failure to instruct resulted in a substantial violation of the accused's rights. *Hair v. State*, 597 P.2d 347, 349 (Okla.Crim.App.1979). A cautionary instruction is not necessary if the factors enumerated above are absent. *Renfro v. State*, 734 P.2d 286 (Okla.Crim.App.1987).

In the instant case, both Burnett and his mother saw the appellant for at least five minutes in good light, Burnett face-to-face and his mother from five feet away; Burnett never lost consciousness after being shot and dumped into the bathtub and continued to view his assailant; both witnesses were positive in their identification of the appellant; neither witness previously failed to identify the appellant; both witnesses remained positive of their identification, even after cross-examination; and there was no inaccuracy in their prior description of the appellant. The jury was fully informed that the evidence was controverted whether the second robber did or did not wear a mask. We find that, under the facts of this case, a cautionary instruction on eyewitness identification was not required, nor did the trial court's failure to *sua sponte* instruct the jury result in a substantial violation of the appellant's

rights. This assignment of error is without merit.

■ For his second assignment of error, the appellant asserts that the trial court committed fundamental error by allowing the introduction of Officer Willis' preliminary hearing testimony at trial without an adequate showing by the State that the Officer was unavailable to testify. The night before the appellant's trial, Officer Willis suffered a heart attack and, at the time he was scheduled to testify, was in the intensive care ward at the hospital.

The appellant relies primarily on *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), in which the Supreme Court ruled that the confrontation clause requires the State to make a good faith effort to obtain the presence of a witness at trial before his preliminary hearing testimony may be used. In applying the principle ennunciated in *Barber*, we established the following standards:

> [T]he prosecution in seeking to introduce the preliminary hearing transcript must sufficiently prove: (1) the actual unavailibility of the witness despite good faith and due diligent efforts to secure the presence of the witness at trial; and, (2) the transcript of the witness' testimony bears sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony.

*Smith v. State*, 546 P.2d 267, 271 (Okla. Crim.App.1976). Once these threshold requirements are met by the State, introduction of the previous testimony is discretionary with the trial court, *id,* and our inquiry on appeal is limited to whether or not the trial court abused its discretion by admitting the preliminary hearing testimony. *Dilworth v. State*, 611 P.2d 256, 259 (Okla. Crim.App.1980).

Here, Officer Willis was subpoenaed to testify at trial but was unable to testify because of a medical emergency. The record reveals the trial court determined the State satisfied its burden of proving the unavailability of the witness despite a good faith and due diligence effort. The court further found sufficient indicia of reliability to admit the preliminary hearing testimony. Thus, the threshold requirements under *Barber* and *Smith* were satisfied. Admission of the preliminary hearing testimony was within the sound discretion of the trial court. We find no abuse of discretion in admitting the preliminary hearing testimony. This assignment of error is without merit.

■ For his third assignment of error, the appellant asserts that the trial court committed fundamental error by refusing his requested instruction on the lesser included offense of Assault and Battery with a Dangerous Weapon. We disagree.

Assault and Battery with a Dangerous Weapon has long been recognized in Oklahoma as a lesser included offense of Shooting with Intent to Kill. *Brown v. State*, 674 P.2d 46, 48 (Okla.Crim.App.1983); *Bailey v. State*, 536 P.2d 985, 986 (Okla. Crim.App.1975). If the circumstances reasonably indicate lack of intent to kill, failure to instruct on the lesser included offense deprives the accused of a fundamental right. *Brown*, at 48, *Bailey*, at 986. Here, the appellant shot Burnett at close range in the abdomen, injuring a vital organ, during a robbery while Burnett was on his knees begging the appellant not to hurt his mother. Burnett was then dumped into the bathtub and his mother thrown on top of him. A rational trier of fact could have found that appellant intended to kill Burnett under these circumstances. *See Speuhler v. State*, 709 P.2d 202, 203–04 (Okla.Crim.App.1985). Therefore, under *Brown*, it was not reversible error for the court to refuse to instruct the jury on the lesser included offense of Assault and Battery with a Dangerous Weapon. This assignment of error is without merit.

■ For his fourth assignment of error, the appellant asserts that, because Officer Willis' preliminary hearing testimony contained a reference that the appellant exercised his right to remain silent at time of arrest, introduction of this testimony was fundamental error under *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 48 L.Ed.2d 91 (1976). We disagree. The

question at the preliminary hearing whether the appellant made any statement at the time of arrest was asked on cross-examination by defense counsel, not by the State, and the officer merely responded "no". Additionally, the State did not exploit at trial the appellant's refusal to give up the right to remain silent in contravention of *Doyle.* This assignment of error is without merit.

■ For his final assignment of error, the appellant argues that charging him both with Feloniously Pointing a Firearm and with Carrying a Weapon constitutes double jeopardy because Carrying a Weapon is a lesser included offense. This argument is patently frivolous. The appellant carried two weapons at the time of his arrest: the .22 caliber pistol he pointed at Officer Willis and the .357 magnum pistol found in his waistband in the search incident to arrest. We have two separate offenses involving two separate weapons. *See generally Peninger v. State,* 721 P.2d 1338, 1341–42 (Okla.Crim.App.1986); *Smith v. State,* 651 P.2d 1067, 1069 (Okla. Crim.App.1982); *King v. State,* 640 P.2d 983, 985 (Okla.Crim.App.1982). This assignment of error is totally devoid of merit.

In light of the foregoing, the appellant's judgments and sentences should be, and hereby are, Affirmed.

BRETT, P.J., and BUSSEY, J., concur.